## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ANGEL M. BUTTON,

      Plaintiff,

v.                          CASE NO. 8:21-cv-2255-KKM-TGW

CHRISTOPHER GARDY PAUL and
JENNIFER SANDERSON DAVIS,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      In 2021, the plaintiff, Angela M. Button, and her husband, Mr. Ehrlich, called the Polk County Sheriff's Office ("PCSO") to report concerns about their hired moving company. Ultimately, the plaintiff herself was arrested by the defendants, Deputy Chris Gardy Paul ("Deputy Paul") and Sergeant Jennifer Sanderson Davis ("Sergeant Davis"). This arrest resulted in the plaintiff, appearing pro se, to ultimately file the Second Amended Complaint (Doc. 19) against the defendants in their individual and official capacity as officers with the PCSO. The defendants filed a Motion to Dismiss (Doc. 22) to which the plaintiff filed a response in opposition (see Doc. 30). I recommend that the Defendants' Motion to Dismiss (Doc. 22) be granted and, further, that the Plaintiff's Second Amended Complaint (Doc. 19) be dismissed with prejudice.

1

I.

The plaintiff alleges that on May 5, 2021, her husband contacted PCSO to report "concerns of [f]raud" by a moving company they had hired (Doc. 19, p. 3). The call was answered by Deputy Paul, who advised that PCSO would not take action since it involved a civil matter (id.). At that time, the plaintiff's husband advised Deputy Paul that he was leaving with the truck driver of the moving company in order to cash a certified check (id.). At some point during that excursion, the driver messaged his dispatcher that he felt threatened by the plaintiff's husband (id., p. 4). This ultimately led to PCSO being contacted again and for Deputy Paul and Sergeant Davis being called onto the scene (id.; see also Doc. 22-1, p. 2).

Meanwhile, while her husband was gone with the driver, the plaintiff decided to sit, at least partially, underneath the still running semi-truck used by the moving company with her 18-month-old child in her lap (id.). Thus, when Deputy Paul arrived at the scene, the plaintiff was still seated partially underneath the semi-truck with her child. Eventually, upon Deputy Paul's order, the plaintiff removed herself and her child from underneath the semi-truck (Doc. 19, p. 5). She then approached Deputy Paul after handing her child over to her husband, who arrived on the scene shortly after Deputy Paul (id.). The plaintiff attempted to speak with Deputy Paul concerning the moving company contract, however, he advised that, at that time, he would only speak with her husband (id.). This caused the plaintiff to,

2

instead, stand "'to the north'" of the semi-truck, but apparently still close by (id.; see also Doc. 22, p. 3).

Deputy Paul ordered that the plaintiff return to her home or else she would be detained (Doc. 19, pp. 6–7). The plaintiff refused to do so and asserted that "he could not order her to leave public property" (id., p. 7). In total, Deputy Paul made three separate orders for the plaintiff to return to her home, to which the plaintiff refused and asserted that "she was not leaving" (id.). Deputy Paul attempted to arrest the plaintiff (see id.; Doc. 22, p. 3). However, the plaintiff resisted the arrest and, thus, Deputy Paul forcefully detained her (Doc. 22, p. 3). Sergeant Davis arrived at the scene after the plaintiff was placed in the back of Deputy Paul's vehicle (Doc. 19, p. 8; Doc. 22, p. 4). The plaintiff was arrested and charged with resisting without violence, disturbing the peace, and felony child abuse (Doc. 19, p. 10). Subsequently, the plaintiff was transported to the Peace River Center, under the Baker Act, where it was determined there was no cause for her commitment (id.).

On September 24, 2021, the plaintiff filed a Complaint (Doc. 1) against PCSO, Deputy Paul, Sergeant Davis, and Sheriff Grady Judd. However, United States District Judge Kathryn Kimball Mizelle dismissed the Plaintiff's Complaint as a shotgun pleading (see Doc. 4). The plaintiff filed an Amended Complaint (Doc. 11), which was also dismissed as a shotgun pleading (see Doc. 13). Thus, the plaintiff's current Second Amended Complaint (see Doc. 19) is the third iteration of

3

her claims.

In her Second Amended Complaint (Doc. 19), the plaintiff asserts six claims: (1) violation of 42 U.S.C. § 1983 by Deputy Paul; (2) violation of 42 U.S.C. § 1985 by Sergeant Davis; (3) malicious prosecution by Deputy Paul; (4) a state claim of battery against Deputy Paul; (5) a state claim of perjury against Deputy Paul; and (6) a state claim of False Report of Child Abuse against Deputy Paul.

The defendants filed a Motion to Dismiss (Doc. 22) to which the plaintiff filed a response in opposition (see Doc. 30). In the defendants' motion, they assert that the plaintiff's "federal and state claims should be dismissed because they fail to allege a plausible claim that [the defendants] violated her constitutional or statutory rights" and, further, that the defendants "are entitled to qualified immunity and sovereign immunity" (Doc. 22, p. 5). The matter was referred to me by Judge Mizelle for a report and recommendation.

II.

A complaint may be dismissed upon motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." To be valid, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). Although a complaint "does not need detailed factual allegations . . . a formulaic recitation of a

4

cause of action's elements will not do." Id. Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, [based] on the assumption that all of the complaint's allegations are true." Id.

Under Rule 12(b)(6), the allegations in the complaint are viewed in the light most favorable to the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). The factual allegations in the complaint, and any reasonable inference, must together "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, supra, at 570. Thus, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[1]

In pro se matters, such as here, the court must liberally construe pleadings. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). However, a pro se pleading "must still comply with procedural rules governing the proper form of pleadings." Hopkins v. St. Lucie County School Board, 399 Fed. Appx. 563, 565 (11th Cir. 2010). Thus, a pro se plaintiff is "not relieved of [her] obligation to allege sufficient facts to support a cognizable legal claim." Excess Risk Underwriters, Inc. v. Lafayette Ins. Co., 208 F. Supp. 2d 1310, 1313 (S.D. Fla. 2002).

---

[1] The Court in Ashcroft v. Iqbal explains that "plausibility" is defined as greater than a mere "possibility," however, it is less than a "probability." Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).

Further, a court will not "'rewrite an otherwise deficient pleading in order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1169 (11th Cir. 2014) (citation omitted).

When a complaint is dismissed as deficient, a pro se plaintiff must generally be given one chance to amend her complaint. Silva v. Bieluch, 351 F.3d 1045, 1048–49 (11th Cir. 2003). However, further opportunities to amend may be denied when such an amendment would be futile. Cornelius v. Bank of America, N.A., 585 Fed. Appx. 996, 1000 (11th Cir. 2014), citing Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007). As the Eleventh Circuit has stated:

> [although] the court "should freely give leave when justice so requires" [under Fed.R.Civ.P. 15(a)(2)] …. justice does not require district courts to waste their time on hopeless cases, [and] leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (describing "futility" as a basis for denying leave).

Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1255 (11th Cir. 2008).

## III.

The plaintiff has sued the defendants in both their individual and official capacities (see Doc. 19, p. 3)[2]. A suit against a person in their official

---

[2] Thus, the plaintiff lists Deputy Paul as a defendant "Individually and in Official Capacity as a Deputy of Polk County Sheriff's Office" and Sergeant Davis as a defendant "Individually and in Official Capacity as a Sergeant of Polk County Sheriff's Office" (Doc. 19, p. 3).

capacity will be treated as a suit against the entity. See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985). Thus, in order for the county to be liable, a plaintiff must show that: (1) "[her] constitutional rights were violated"; (2) the county "had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F. 3d 1283, 1289 (11th Cir. 2004). The plaintiff has not alleged that the county's custom or policy was the cause of the constitutional violations she has asserted. Thus, to the extent the defendants have been sued in their official capacity, the Motion to Dismiss (Doc. 22) should be granted. Accordingly, the claims that the plaintiff asserts against the defendants are assessed in their individual capacities only.

A. Shotgun Pleading

As indicated, the plaintiff's two prior complaints were dismissed as shotgun pleadings by Judge Mizelle (see Docs. 4, 13). The Eleventh Circuit has stated the following about shotgun pleadings:

> A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).
>
> …
>
> "[W]e have identified four rough types or categories of shotgun pleadings." *Weiland*, 792 F.3d at 1321. The first is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire

7

> complaint." *Id.* The second is a complaint that is "replete
> with conclusory, vague, and immaterial facts not
> obviously connected to any particular cause of action." *Id.*
> at 1322. The third is a complaint that does not separate
> "each cause of action or claim for relief" into a different
> count. *Id.* at 1323. And the final type of shotgun pleading
> is a complaint that "assert[s] multiple claims against
> multiple defendants without specifying which of the
> defendants are responsible for which acts or omissions, or
> which of the defendants the claim is brought against." *Id.*

Barmapov v. Amuial, 986 F.3d 1321, 1324–25 (11th Cir. 2021). The plaintiff's

Second Amended Complaint (Doc. 19) is not much better. Thus, at the beginning of

the pleading she has stated in seven paragraphs an introduction, jurisdiction and

venue and the parties. That is followed by eighty-nine paragraphs, paragraphs eight

through ninety-six called, inaccurately, "Factual Allegations Common to All

Counts" (id.). Consequently, the complaint is still a shotgun complaint.

This conclusion is confirmed by an examination of the plaintiff's first

count in which she alleges a litany of constitutional violations. Thus, she asserts

violations of her First Amendment right to "petition the government for a redress of

grievances and assemble," violation of her "Fourth, Fifth, and Fourteenth

Amendment" right of "due process," and that she suffered cruel and unusual

punishment in violation of the Eighth Amendment (id., pp. 14–15). As indicated, she

incorporates all preceding ninety-six paragraphs and factual allegations to support

this claim. The plaintiff does not attempt to identify which of the eighty-nine factual

allegations are relevant to that particular claim. Barmapov v. Amuial, supra, 986

8

F.3d at 1324–25. Significantly, Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The first claim is neither short nor plain as she broadly asserts multiple constitutional violations and merely cites all eighty-nine factual allegations to support the violations. The purpose of this rule is to give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, supra, 550 U.S. at 555. The defendants are not required to decipher which of the eighty-nine factual allegations are meant to support each constitutional violation asserted by the plaintiff.

The plaintiff's second count has similar deficiencies. The plaintiff's second claim alleges a violation of 42 U.S.C. § 1985 by Sergeant Davis. Similar to her other claims, the plaintiff clearly has not met her standard of alleging "sufficient facts to support a cognizable legal claim." Excess Risk Underwriters, Inc. v. Lafayette Ins. Co., supra, 208 F. Supp. 2d at 1313. The plaintiff asserts that Sergeant Davis "intentionally and recklessly omitted" various "material facts" about the incident which, presumably, would show that the plaintiff should not have been arrested (Doc. 19, pp. 15–16). In sum, it appears that the plaintiff attempts to assert a claim of conspiracy under 42 U.S.C. § 1985 as she states, in a conclusory manner, that "Sergeant Davis conspired with Deputy Paul to deprive the Plaintiff of her civil rights" (id., p. 16). This claim is meritless.

Section 1985 provides relief for three types of conspiracies: a conspiracy to (1) prevent a person from holding public office or discharging the duties of that office, (2) intimidate or deter a party or witness in court, and (3) to deprive a person of rights, privileges, and the equal protection of the laws. 42 U.S.C. § 1985 (1)–(3). Presumably, the plaintiff seeks relief from the third type of conspiracy, although she does not specifically say so. The plaintiff must allege that the defendants "(1) conspired . . . (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) taken or caused an action to be taken in furtherance of the conspiracy's object, and (4) injured an individual's person or property or deprived her of exercising any right or privilege of a United States citizen." Dean v. Warren, 12 F.4th 1248, 1255 n.8 (11th Cir. 2021) (internal citation omitted). The plaintiff must also assert "some racial, or perhaps otherwise class-based individually discriminatory claims behind the conspirators' action." Chavis v. Clayton Cty. Sch. Dist., 300 F.3d 1288, 1292 (11th Cir. 2002) (internal citation omitted).

The plaintiff has not asserted any such facts to support this claim. She merely asserts various facts, which she deems to be relevant, that Sergeant Davis omitted. For instance, she asserts that Sergeant Davis "intentionally and recklessly omitted the conditions of the parked truck, to include the visibility, speed limit, flow

10

of traffic, and warning signs," which were, allegedly, "exculpatory to Deputy Paul's allegations that [the plaintiff] was putting herself or [her child] in harm's way by their proximity to the truck" (Doc. 19, p. 15). Such "conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint." Prunty v. Arnold & Itkin, LLP, 2:17-CV-506-FTM-99CM 2017 WL 5971681 at *3 (M.D. Fla. Dec. 1, 2017). The plaintiff's adoption of the eighty-nine factual allegations does not suffice to sustain count II against Sergeant Davis.

B. Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vineyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). To receive qualified immunity, the government official first must prove that he was acting within his discretionary authority at the time of the alleged violation. See Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). Once that has been shown, the burden then shifts to the plaintiff who must show that (1) the official violated her constitutional right and (2) that those rights were clearly established at the time when the official acted. Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017).

The facts clearly show that Deputy Paul was acting pursuant to his authority as an official and, thus, within his discretionary authority at the time of the

plaintiff's arrest. As indicated, Deputy Paul was called to the scene where he found the plaintiff and her child under the wheel of the semi-truck. He later forcibly detained the plaintiff after she failed to comply with his order to move away from the truck. Thus, the issue then is whether Deputy Paul violated the plaintiff's constitutional rights.

Notably, the plaintiff was arrested without a warrant. Thus, as acknowledged by the defendants in their motion, in order to receive qualified immunity the defendants have the burden of showing that the arrest was based either on probable cause or arguable probable cause to arrest. The greater standard of probable cause is met "where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." United States v. Allison, 953 F.2d 1346, 1350 (11th Cir. 1992) (internal citation omitted). Only a fair probability or substantial chance of criminal activity are needed to have probable cause. Id.

The plaintiff broadly states that "Deputy Paul had no probable cause to any of his alleged charges to arrest Ms. Button" (Doc. 19, p. 4). This contention is unavailing. Rather, construing the facts in the light most favorable to the plaintiff, probable cause, or at least arguable probable cause, existed for child abuse. This conclusion is based on the facts presented by both parties surrounding the plaintiff's

12

arrest, including the arrest warrant provided by the defendants in their motion.[3]

The plaintiff was arrested for three offenses: resisting without violence, disturbing the peace, and felony child abuse. As discussed, when Deputy Paul arrived at the scene, the plaintiff had placed herself—and her child—under the wheel of a running semi-truck (id., p. 4). The parties dispute whether the plaintiff, and her child, were in danger due to their proximity with the semi-truck. The plaintiff states that they were "partially under (1-2 inches . . .)" the vehicle (id.). Meanwhile, Deputy Paul reported that the plaintiff "intentionally placed herself underneath a semi-truck, which was running, with her [child] sitting in her lap to intentionally obstruct/hinder the semi-truck from continuing its flow of traffic" (Doc. 22-1, p. 2).

Under Florida Statute § 827.03(b)(1), "child abuse" is defined, in part, as "[a]n intentional act that could be reasonably expected to result in physical or mental injury of a child." Deputy Paul clearly had probable cause, or at least arguable probable cause, to arrest the plaintiff for child abuse. When he arrived on the scene, the plaintiff was at least partially under the running semi-truck, which she does not

---

[3]The Eleventh Circuit has stated that, when analyzing a motion to dismiss, only the face of the complaint and attached documents are considered. Notably, the arrest affidavit was not attached to the Plaintiff's Second Amended Complaint (Doc. 19); rather, it was attached to the Defendants' Motion to Dismiss (Doc. 22). However, the Eleventh Circuit has provided an exception where "a plaintiff refers to a document in [her] complaint, (2) the document is central to [her] claim, (3) its contents are not in dispute, and (4) the defendant attaches the document to its motion to dismiss." Fin. Sec. Assurance, Inc. v. Stepandhends, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007). As the defendants correctly assert, the arrest affidavit falls into these exceptions. Thus, the affidavit may properly be considered to establish probable cause.

dispute, with her 18-month child in her lap. Consequently, an officer arriving at the scene could have reasonably believed that the plaintiff was committing child abuse since a child being partially placed under a semi-truck could have very well resulted in physical, or even mental, injury. See Wukoson v. Baxter, 807-CV-1360-T-24EAJ, 2008 WL 4093609 at *7 (M.D. Fla. Aug. 29, 2008). Thus, Deputy Paul had probable cause, or at the very least arguable probable cause, to arrest the plaintiff for this charge.

Additionally, as correctly noted by the defendant, while the plaintiff's charges were ultimately dismissed, that fact does not affect whether Deputy Paul had probable cause to arrest the plaintiff. Further, an arrest is constitutional so long as it is supported by probable cause for any offense. Elmore v. Fulton Cty. School District, 605 F. App'x 906, 914 (11th Cir. 2015). Thus, since Deputy Paul had probable cause for at least one, if not all, of the charges for which the plaintiff was arrested, the arrest itself was constitutional.

The determination of probable cause eliminates the plaintiff's third count for malicious prosecution as well. The plaintiff fails to state whether this claim is brought under federal or state law.[4] However, in either circumstance, the determination of probable cause[5] yields the same result. An arrest without probable

---

[4] The plaintiff's remaining three claims are explicitly noted as "state" claims. Thus, it is presumed this claim also is brought under federal law.

[5] The standard for determining probable cause is the same under both federal and state law. See

cause violates the Fourth Amendment and will support a claim for malicious prosecution under both federal and state law. See Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003); see also Johnson v. Weiner, supra, 19 So.2d 699, 700 (Fla. 1944); Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004). On the other hand, a finding of probable cause defeats a malicious prosecution claim under section 1983. See id.; see also Worlds v. Home Depot U.S.A., Inc., 8:21-CV-1534-CEH-SPF, 2022 WL 958893 at *11 (M.D. Fla. Mar. 28, 2022) ("As the absence of probable cause is a requirement to state a claim for malicious prosecution . . . it follows the existence of probable cause is a bar to Plaintiff's claim against the [defendant] for malicious prosecution under federal law."). Accordingly, Deputy Paul is entitled to qualified immunity for the claims raised against him in counts one and three. Moreover, Sergeant Davis is also entitled to qualified immunity for these reasons. At the time of the arrest, Sergeant Davis arrived on scene to provide assistance. Similar to Deputy Paul, Sergeant Davis was within her discretionary authority, at the time of the plaintiff's arrest, which, as indicated, was based on probable cause or at least arguable probable cause. Thus, Deputy Paul and Sergeant Davis are entitled to qualified immunity to any federal claims raised against them individually.

---

Rankin v. Evans, 133 F.3d 1425, 1435–36 (11th Cir. 1998).

C. Remaining State Claims

The plaintiff asserts three state claims of battery, perjury, and false report of child abuse against Deputy Paul. However, at this point there is no need to evaluate the state law claims. The plaintiff has alleged federal question jurisdiction under 28 U.S.C. § 1331 (Doc. 19, p. 2). As discussed, the plaintiff has not pled any viable federal claims and, moreover, she has not asserted diversity jurisdiction. Thus, while the plaintiff has asserted that the court has "supplemental jurisdiction of the state law claim[s]," the court should not exercise jurisdiction over these claims (id.).

Finally, as indicated, this is the plaintiff's third iteration of her claims, with the first two being dismissed as shot gun pleadings by Judge Mizelle (see Docs. 4, 13). Furthermore, the plaintiff's response in opposition to the defendants' motion does not cure any of the deficiencies in her amended complaints. Thus, since there is nothing to suggest that giving the plaintiff an opportunity to file a third amendment, i.e., a fourth complaint, will lead to a different result, I recommend that the second amended complaint be dismissed with prejudice. Mizzaro v. Home Depot, Inc., supra, 544 F.3d at 1255 ("[L]eave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim.").

IV.

For these reasons, I recommend that the Defendants' Motion to Dismiss

(Doc. 22) be granted. Further, I recommend that the Plaintiff's Second Amended Complaint (Doc. 19) be dismissed with prejudice.

Respectfully submitted,

*Thomas G. Wilson*
_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: July 29, 2022.

NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections.  28 U.S.C. 636(b)(1)(C).  Under 28 U.S.C. 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.

17